UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

GLEN ADKINS,

        Plaintiff,

v.                                    Case No:   2:14-cv-588-FtM-38DNF

ALLSTATE FIRE AND CASUALTY
INSURANCE COMPANY,

        Defendant.
_____/

**ORDER[1]**

This matter comes before the Court on Defendant's Motion for Summary Judgment Declaring No Uninsured Motorist Coverage (Doc. #29) filed on May 15, 2015.  Plaintiff filed a Response in Opposition on May 27, 2015.  (Doc. #31).  The matter is now ripe for review.

**Background**

Plaintiff Glen Adkins is an individual seeking underinsured motorist coverage benefits.  Defendant Allstate Fire and Casualty Insurance Company is the underwriter of an insurance policy issued to Plaintiff's now ex-wife.  In August 2014, Plaintiff was involved in an altercation at a sports bar in Cape Coral, Florida, which resulted in a tragic accident.  (Doc. #28-3 at 17).  As Plaintiff explains, during the altercation, he was standing in the sports bar's parking lot when a vehicle accidentally ran him over. (Doc. #28-3 at

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other Web sites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the Court has no agreements with any of these third parties or their Web sites. The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

19). As a result, Plaintiff suffered two broken sacrums, a dislocated hip, five broken ribs, a laceration on his head, a laceration in his pelvic area, and a laceration on his testicles. (Doc. #28-3 at 20).

Jennifer Adkins, Plaintiff's now ex-wife, maintained an auto insurance policy with Defendant that included underinsured motorist coverage. (Doc. #28-1 at 30-78). After receiving a minimal monetary recovery from the driver-at-fault's insurance company, Plaintiff filed a claim under his ex-wife's policy, averring that it covered him for this accident because the driver at fault was underinsured. (Doc. #24 at 1-5). Defendant disagreed and denied Plaintiff's claim. (Doc. #24 at 1-5). Faced with limited options, Plaintiff filed the instant action asserting two counts: Declaratory Action for Coverage (Count 1) and Uninsured/Underinsured Motorist Claim Against Allstate (Count 2). (Doc. #24 at 3-5). Now, Defendant moves for summary judgment in its favor.

## Legal Standard

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is genuine if there is sufficient evidence such that a reasonable jury could return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L. Ed. 2d 202 (1986). Similarly, an issue is material if it may affect the outcome of the suit under governing law. *Id.*

The moving party bears the burden of showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L. Ed. 2d 265 (1986). In deciding whether the moving party has met this initial burden, the Court must review the record and all reasonable inferences drawn from the record in the light

most favorable to the non-moving party.  *Whatley v. CNA Ins. Co.*, 189 F.3d 1310, 1313 (11th Cir. 1999).  Once the Court determines that the moving party has met its burden, the burden shifts and the non-moving party must present specific facts showing that there is a genuine issue for trial that precludes summary judgment.  *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, S.Ct. 1348, 89 L. Ed. 2d 538 (1986). "The evidence presented cannot consist of conclusory allegations, legal conclusions or evidence which would be inadmissible at trial."  *Demyan v. Sun Life Assurance Co. of Canada*, 148 F.Supp.2d 1316, 1320 (S.D. Fla. 2001) (citing *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991)).  Failure to show sufficient evidence of any essential element is fatal to the claim and the Court should grant the summary judgment.  *Celotex*, 477 U.S. at 322-323.  Conversely, if reasonable minds could find a genuine issue of material fact then summary judgment should be denied.  *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1532 (11th Cir. 1992).

## Discussion

The issue before the Court today is whether Plaintiff is eligible to receive underinsured motorist benefits under his ex-wife's automobile insurance policy ("the Policy").  The Policy provides underinsured motorists coverage for "damages which an insured person is legally entitled to recover. . . ."  (Doc. #24 at 34).  Insured person is defined, in pertinent part, as "any relative who resides in [the policyholder's] household." (Doc. #24 at 34).  Within that definition, "Reside" is defined as a "physical presence in [the policyholder's] household with the intention to continue living there."  (Doc. #24 at 18).

With these definitions in hand, Defendant seeks summary judgment in its favor, averring that Plaintiff is not covered by the Policy because he did not reside in his ex-wife's household at the time of the accident, and has not resided there since. In support, Defendant points to several facts that appear favorable to its position, including the fact that, prior to the accident, Plaintiff's ex-wife secured a domestic violence injunction against him, preventing him from returning to their marital home for two years, and that two weeks prior to the accident, Plaintiff entered into a one-year lease agreement on his own apartment. Plaintiff disagrees, arguing that there is little question whether he was covered by the Policy because he qualified as a relative who "resided" at his ex-wife's residence. To that end, Plaintiff notes that he left certain personal items at the residence and that he was attending anger management classes in an attempt to reconcile his marriage. After considering the Parties' respective positions, the Court finds Defendant's argument persuasive.

Under Florida law, "insurance contracts are construed according to their plain meaning." *Garcia v. Federal Ins. Co.*, 969 So.2d 288, 291 (Fla. 2007). Courts should not "rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties." *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So.2d 528, 532 (Fla. 2005) (internal citations and quotations omitted). Instead, "if a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." *Id.* (internal citations and quotations omitted). Here, when the Court construes the Policy's clear and unambiguous definition of "reside," it is evident that Plaintiff failed to maintain the physical presence necessary to receive underinsured motorist benefits.

It is undisputed that Plaintiff and his ex-wife separated on July 15, 2013, when she initiated divorce proceedings and secured a domestic violence injunction against him. (Doc. #28-2 at 4:12-5:1).   The terms of the injunction were simple – Plaintiff was not allowed to return to the martial home for two years or have any communication with his ex-wife, except by email when it related to their children.  (Doc. #28-2 at 19:17; Doc. #28-3 at 14:17-21).  As a result, on the date that the state court issued the injunction, Plaintiff was escorted from the marital home by sheriff's deputies.  (Doc. #28-3 at 5:5-11). Plaintiff's ex-wife, however, continued to reside in the home with their children.  (Doc. #28-2 at 7:18-8:7).   In the months that followed, Plaintiff abided by the terms of the injunction, returning to the home only once to retrieve some personal property, while accompanied by a sheriff's deputy.  (Doc. #28-2 at 17:4-6).  Plaintiff also ceased all communications with his ex-wife other than running into her on a few occasions related to their children and seeing her in the hospital after the accident.  (Doc. #28-2 at 16:1-12).  Plaintiff's residence during this period consisted of sleeping on friends' couches, renting hotel rooms, and, two weeks prior to the accident, securing a one-year lease on an apartment.  (Doc. #28-3 at 3:30-6:5).  Other than the sole occasion when Plaintiff returned to the home accompanied by a sheriff's deputy, Plaintiff had no physical presence in the marital home.  (Doc. #28-2 at 20:18-22).  And this lack of physical presence, in the Court's view, fails to meet the policy's definition of "reside."  *See Kiplinger v. Kiplinger*, 2 So.2d 870, 873 (Fla. 1941) ("Residence indicates place of abode, whether permanent or temporary.") (citations omitted).

Notably, Plaintiff fails to present any facts indicating that his ex-wife lifted the injunction at any point.  Nor does Plaintiff present any facts indicating that he returned to

the home on another occasion.[2]  Instead, Plaintiff directs the Court's attention to *Trezza v. State Farm Mut. Auto Ins. Co.*, 519 So.2d 649 (Fla. 2d DCA 1988), which, Plaintiff avers, "fit[s] like a glove" to the facts of this action.  (Doc. #31 at 8-10).  There, the court examined "[w]hether a person in the Armed Forces remains a 'resident' of his former household when he has not evidenced an intent to alter his residence and is only physically absent from his home for the purposes of serving his country in the naval or military services of the United States."  *Id.* at 650.

        In answering this question in the affirmative, the court focused on case law from around the country dealing with uninsured/underinsured motorist coverage and the residency of members of the Armed Forces.  Needless to say, the instant action is clearly distinguishable.  In *Trezza*, the plaintiff's absence from the policyholder's household was due to his deployment to a military base; after which, he was certain to return to that household.  Here, not only did Plaintiff have an injunction entered against him that prevented him from returning to his ex-wife's household for two years, but it also forbid him from communicating with her except on a very limited basis.  And more importantly, Plaintiff's ex-wife initiated divorce proceedings against him on the same day that the injunction was entered.  Therefore, even when the injunction term ended, Plaintiff would not be able to return to his ex-wife's household because they would likely be divorced.  These proceedings were not simply a temporary arrangement analogous to a military

---

[2] Plaintiff appears to rely on, and provide cites to, a deposition of his ex-wife that was taken in connection with the divorce proceedings.  But that deposition has not been submitted to the Court, and therefore cannot be used to defeat summary judgment.  *See Avirgan*, 932 F.2d at 1577.  Nevertheless, even if Plaintiff had presented this deposition to the Court (which he has not), it does not appear that it would be enough to defeat summary judgment.

deployment; they were a means to remove Plaintiff from his ex-wife's household, and they succeeded in doing so.

Plaintiff's other primary citations fair no better.   In *Sanders v. Wausau Underwriters Ins. Co.*, 392 So.2d 343 (Fla. 5th DCA 1981), the plaintiff filed a claim on her mother's policy, who she was living with at the time, after becoming injured in an accident.  The defendant insurance company denied her claim, finding that she was not a member of her mother's household because she was "only temporarily estranged from her husband."  *Sanders*, 392 So.2d at 344.  The Florida trial and appellate courts agreed, citing cases from Washington and Texas state courts that held "whether a wife is no longer a member of her husband's household is not just physical absence, but physical absence coupled with an intent to return."  *Id.* at 344-45.

The instant action is distinguishable in several respects.  To begin, in *Sanders*, the plaintiff was not residing in her mother's household because of a domestic violence injunction filed against her by her husband.  This is significant because without such an injunction, the plaintiff could seemingly reunite with her husband and return to his household at any moment.  Here, a court order forbid Plaintiff from returning to his ex-wife's household for at least two years, and he seemingly could not reunite with his ex-wife because their communication was limited to emails regarding their children.  Moreover, unlike the instant action, the *Sanders* Court fails to mention that divorce proceedings had begun between the plaintiff and her husband.  This is also significant because it is doubtful that the plaintiff and her husband would be considered only "temporarily separated" if such proceedings were ongoing.

Likewise, in *Row v. United Services Auto. Ass'n*, 474 So.2d 348 (Fla. 1st DCA 1985), the plaintiff, a father who maintained an automobile insurance policy, filed suit against his insurer, on behalf of his son's estate, seeking insurance coverage for his son after he was tragically killed in a hit-and-run accident.  In doing so, the plaintiff averred that his son was part of his household for the purposes of his insurance policy because his son lived in one of twelve apartments that the plaintiff owned and also resided in. *Id.* at 349.  The trial court found that living in separate apartments in the same complex did not amount to sharing a household as required by the policy, but the appellate court disagreed. *Id.*  The appellate court focused on the fact that all the family members who lived in the apartment complex, although in different apartments, shared keys to the family apartments and could come and go as they please. *Id.* at 350.  The court also noted that the son continued to rely on the plaintiff for support both financially and emotionally, as he was suffering from a mental illness at the time of his death. *Id.*

Interestingly, the *Row* Court made clear that in Florida, "what constitutes residency in a household is a mixed question of law and fact to be determined from the facts of each individual case." *Id.* at 349.  And the facts here are easily distinguishable from *Row.*  To be sure, Plaintiff was not residing in the same apartment complex or other multi-family housing unit as his ex-wife.  He was not able to come and go from his ex-wife's household as he pleased – not only because of the injunction, but also because his ex-wife changed the locks shortly after the sheriff escorted him out.  It is also unlikely that Plaintiff was relying on his ex-wife for emotional support, as their communications were limited to emails regarding their children. Nor does it appear that he was relying on her financially

either, as he signed his own one-year lease without any form of assistance from his ex-wife.

Altogether, the facts of this case illustrate that Plaintiff did not "reside" in his ex-wife's household at the time of his tragic accident. While Plaintiff attempts to analogize cases dealing with military deployments and temporary estrangements, the fact remains that these cases are easily distinguishable. Plaintiff was not temporarily removed from his wife's household; he was forcibly removed by a court order that was accompanied with the initiation of divorce proceedings. The fact that Plaintiff still had personal items at his ex-wife's household speaks more to the urgency with which he was removed from the household than to any possibility that he would return. There is no doubt that Plaintiff suffered a tragic accident. But the facts before the Court clearly indicate that at the time of the accident, Plaintiff was no longer considered a member of his ex-wife's household – physically or mentally. Consequently, Plaintiff is not entitled to underinsured motorist benefits under his ex-wife's automobile insurance policy.

Accordingly, it is now

**ORDERED:**

Defendant's Motion for Summary Judgment Declaring No Uninsured Motorist Coverage (Doc. #29) is **GRANTED**. All pending motions are **DENIED AS MOOT**. The Clerk is directed to **CLOSE** this action and enter judgment accordingly.

**DONE** and **ORDERED** in Fort Myers, Florida, this 15th day of June, 2015.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record